UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANDREA P.-A.,

Petitioner,

v.

KRISTI NOEM, Secretary of the Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; TODD LYONS, Acting Director of Immigration and Customs Enforcement; ORESTES CRUZ, Acting Director of the ICE Field Office; and CHRISTOPHER CHESTNUT, Warden of the California City Detention Center,

Respondents.

No. 1:25-cv-02080-KES-SKO (HC)

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

Doc. 4

This habeas action concerns the re-detention of petitioner Andrea P.-A., a noncitizen who was detained and released in 2022 but was recently re-detained.[1] This matter is before the Court on petitioner's motion for temporary restraining order. Doc. 4. For the reasons explained below, petitioner's motion for temporary restraining order, which the Court converts to a motion for preliminary injunction, is granted.

/ / /

_____

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only her first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    Background

Petitioner is a noncitizen who entered the United States on June 4, 2022 without inspection.  Doc. 11, Sanchez Decl. at ¶ 5.  Immigration authorities initially detained her after her entry, but they released her on June 22, 2022.  *Id.* ¶ 6.  They provided her with an order of release on recognizance which stated that she was being released "in accordance with" 8 U.S.C. § 1226, provided that she comply with certain conditions.  Doc. 11, Ex. 2.  The regulations that authorize immigration authorities to release a noncitizen pursuant to § 1226 require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding."  8 C.F.R. § 1236.1(c)(8).  Such "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Following her release, petitioner sought relief in her removal proceedings by filing an asylum application.  Doc. 5, Andrea P.-A. Decl. at ¶ 4.  Respondents do not dispute petitioner's assertion that she has maintained a clean criminal record while in the United States.  Doc. 1 at ¶ 2; *see* Doc. 11.  Respondents assert that petitioner missed self-report check-ins on three occasions, most recently on October 1, 2025.  Doc. 11, Sanchez Decl. at ¶ 5.  Petitioner disputes this and asserts that she complied with all conditions of her release.  Doc. 5, Andrea P.-A. Decl. at ¶¶ 3, 7; Doc. 1 at ¶¶ 21–22.

Immigration and Customs Enforcement ("ICE") agents instructed petitioner to report for an in-person appointment on October 2, 2025.  Doc. 5, Andrea P.-A. Decl. at ¶ 6.  Petitioner asserts that even though her friends and family warned her "that the real purpose of this request was to detain [her] without any charges," she nevertheless reported as instructed.  *Id.* ¶ 7.  When she did so, ICE agents arrested her.  *Id.* ¶ 8; Doc. 11, Sanchez Decl. at ¶ 9.  Petitioner is now detained at California City Detention Center.  Doc. 11, Sanchez Decl. at ¶ 9.  The declaration of deportation officer Sanchez asserts that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  *Id.* ¶ 15.

Several months before her detention, the Department of Homeland Security ("DHS") issued a policy which provides that noncitizens who entered the United States without admission or parole are subject to 8 U.S.C. § 1225(b), a statutory provision which mandates detention. Doc. 1 at ¶ 31. In *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the Board of Immigration Appeals agreed with DHS's new reading of the statute. *Id.* ¶ 45.

On December 31, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2, arguing that her re-detention without a pre-deprivation bond hearing violates the Due Process Clause of the Fifth Amendment. Respondents filed an opposition on January 9, 2026. Doc. 11.

## II.    Conversion to a Motion for Preliminary Injunction

The Court directed respondents to state their position on whether the motion for temporary restraining order should be converted to a motion for preliminary injunction and whether they requested a hearing on the motion. Doc. 9. Respondents do not object to converting the motion and do not request a hearing. Doc. 11 at 2. Given that the standards for issuing a temporary restraining order and a preliminary injunction are substantially the same, *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), and respondents had notice and opportunity to respond in opposition, see Doc. 11, petitioner's motion is converted to a motion for preliminary injunction.

## III.    Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v.*

3

*Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### IV.   Discussion

#### a.   Likelihood of Success on the Merits

Petitioner argues that DHS's new policy and the BIA's decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), are based on an erroneous interpretation of the statute, and that because she has no opportunity for a bond hearing under those authorities, her due process rights have been violated. *See* Doc. 4 at 3–13. Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

#### 1.   Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (due process requires hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, her "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if [she] fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in her "continued liberty." *Id.* at 481–84. Immigration officials' release of petitioner pursuant to 8 U.S.C. § 1226(a) was similar. Among other things, it allowed her to live in the community and seek relief in her removal proceedings.

Respondents assert that petitioner is subject to 8 U.S.C. § 1225(b)(2)(A) and that petitioner's detention is therefore mandatory. The assertion that § 1225(b)(2) applies to someone in petitioner's circumstances is incorrect for the reasons set forth in *Sharan S. v. Chestnut*, No. 1:25-CV-01427-KES-SKO (HC), 2025 WL 3167826, at *4–8 (E.D. Cal. Nov. 12, 2025). Moreover, even if respondents were correct that section 1225(b)(2)(A) could apply to petitioner, the government previously represented to petitioner in the notice of custody determination that she was being released "[p]ursuant to the authority contained in section 236" of the INA, which is codified at 8 U.S.C. § 1226. Doc. 11, Ex. 2. Under section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Petitioner's prior release pursuant to section 1226(a) thus created a reasonable expectation that she would be entitled to retain her liberty so long as she was not a flight risk or danger. *Cf. Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest). As another court recognized in this context, once the government "elect[s] to proceed . . . under § 1226, [it]

5

cannot [] reverse course and institute § 1225 . . . proceedings." *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025).  Even if section 1225(b) *did* apply, petitioner has a protected liberty interest based on the government's prior representation to her that her release was pursuant to section 1226, combined with the three years she spent at liberty while relying on that representation.

The Court finds that petitioner has a protected liberty interest in her release.  *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).  The Court must therefore determine what process is due before the government may terminate her liberty.

### 2. *Mathews* Factors

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Petitioner had been out of custody for over three years in reliance on the government's previous representations that she was being released

pursuant to § 1226(a) pending her removal proceedings.  Her detention denies her that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community.  *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172.  While the parties dispute the extent to which petitioner missed certain virtual check-ins, the District Court for the Western District of Washington found in a similar case in which a noncitizen had missed appointments with ICE agents, it does not "necessarily follow that Petitioner can be detained for those violations without a hearing." *E.A. T.B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025).  Those considerations may well be relevant to a neutral decisionmaker's detention determination, but they do not eliminate petitioner's right to due process.  "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *Id.*  As there were no procedural safeguards to determine if petitioner's re-detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025).  In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6.  "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove that she is a flight risk or danger to the community by clear and convincing evidence.  That hearing should have occurred before petitioner was re-detained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an

opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . .").

Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R.*, 2025 WL 1983677, at *9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)). While respondents allege that petitioner missed certain virtual check-ins, most recently on October 1, 2025, when ICE instructed petitioner to report in person she did so on October 2, 2025, even though her friends and family warned her that the purpose of the appointment was to detain her. Doc. 5, Andrea P.-A. Decl. at ¶¶ 6–8. The fact that petitioner appeared as instructed undermines the argument that exigent circumstances warranted her immediate arrest as a flight risk, without any pre-deprivation process. The Court concludes that a pre-deprivation hearing is necessary to satisfy due process.

With these considerations in mind, petitioner is likely to succeed on the merits.

### b. Irreparable Harm

Turning to the second *Winter* factor, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Given the Court's conclusion that petitioner is likely to succeed on the merits of her claim that her detention without a bond hearing violates the Due Process Clause, petitioner faces irreparable

8

harm absent a preliminary injunction.

### c.  Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted).  Although the government has a strong interest in enforcing the immigration laws, the issue in this case is not whether the government can detain petitioner at all, but whether it can detain petitioner without a bond hearing.  Faced with a choice "between [this minimally costly procedure] and preventable human suffering," the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor."  *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor.  "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

### d.  Remedy

In conclusion, the Court finds that the requirements for issuing a preliminary injunction are met.  Petitioner's immediate release is required to return her to the status quo ante—"the last uncontested status which preceded the pending controversy." *Pinchi*, 2025 WL 1853763, at *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18, 2025) (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v. Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same).

///

///

9

**V.    Conclusion and Order**

Accordingly:

1. Petitioner's motion for a preliminary injunction, Doc. 4, is GRANTED.

2. Respondents are ORDERED to release petitioner immediately.

3. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified.

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Garcia*, 2025 WL 1676855, at \*3; *Pinchi*, 2025 WL 1853763, at \*4.

5. This matter is referred to the assigned magistrate judge for further proceedings including the preparation of findings and recommendations on the petition or other appropriate action.

IT IS SO ORDERED.

Dated:    January 11, 2026

_____
UNITED STATES DISTRICT JUDGE

10